All right, we are ready to hear arguments in Cribari v. Allstate. We'll hear from the appellant. Good morning. My name is Mark Levy and may it please the court. Thank you all for giving us the opportunity to be heard this morning. I represent Beverly Cribari and I believe I have distilled down to three discrete areas to show how Mrs. Cribari did not get a fair shake from this process. The first has to do with the fact of submitting a breach of contract instruction to the jury and the claim of breach of contract to the jury after the defendant had made a payment kind of a mystery payment in February shortly before trial and I call it a mystery payment because it came only with a letter from counsel. It did not come from claims and that letter did not describe why the payment was being made. It just said that a payment was being made and that we were going to reserve our rights to claw back the money if the jury found that there was a failure to cooperate. And at this point I'm going to say the jury did not make such a finding and therefore that's sort of on the cross appeal. They should owe us the money. But in any event, we couldn't cash the check. We did cash the check and put it in trust because of Ethics Rule 1.15a that we are required to keep property for which there is a dispute and more people more than one person claims entitlement to the property, which is what Allstate has done. Do we have a problem here Mr. Levy of this case not being a final judgment? We've got sort of a major hangnail out there, don't we? The one you just described, who gets the $250,000? Well, we believe the fact matched the trial court rule that the jury had made no finding of failure to cooperate. We do not understand how Allstate could make that assertion. They have made the assertion. I also argued that there is no mechanism under Colorado law to be able to claw back a payment like this that you make to the insured. But I do think, you know, we have done a whole final judgment on all this, Your Honor, and I guess that would be a good... I don't understand why Allstate is still claiming that the jury made a finding of failure to cooperate. No, I think to their benefit, I think they thought they'd prevail in a jury trial. So they thought this matter was done and they would get the money back on their reservation of rights. Yes, Your Honor, I understand that part. But if you take a look at the instructions on the breach of contract, and that comes down to we should not have submitted the breach of contract to the jury, it was essentially fatal. You say to the jury on a contract where the only thing we're suing on is payment of $250,000, you say to the jury that they breached the contract by not paying $250,000. And of course, the jury is going to say no, but they did not say that there was a failure to cooperate. And in fact, Allstate was given the opportunity of following a jury question to submit a special interrogatory to the jury and declined that opportunity. The breach of contract claim should have been considered either confessed or moot. But what was the probative value of telling the jury that a payment had been made? There was none. We filed a motion in limine on this, and even Allstate in their response to the motion in limine did not describe a single element of probative value as to why tell the jury that a payment had been made. We just don't know why. And this error was compounded by the fact that we were not allowed to do any discovery. I asked to do discovery on this new, very important fact as to why this claim payment was made, and I will submit to the court that- So now you're talking about the denial of your motion in limine, right? Yes, Your Honor. And that's an abuse of discretion standard of review for us. I think as a matter of law that there is no basis at all that it is plain error and as a matter of law to ask the jury to rule on the breach of contract after they've been told that the payment had been made and or it was an abuse of discretion, but it was incredibly unfairly prejudicial. And the only person who said why the payment was made was trial counsel. So we were not allowed to inquire or not allowed to do any sort of effective process examination or anything like that. So the second element that I have distilled down is allowing something called the setup defense. And this is described by all state counsel in his closing argument that they didn't want the claim to be paid and they engaged in conduct that they're going to claim is bad faith because they want to go through the litigation process to recover more than the amount at the end of the day. And at the end of the day, if you find that they were trying to set up my client, then you should return verdicts in favor of the defendant. Now, this has no legal or logical basis exactly how the motives of the plaintiff's attorney and doing anything are relevant was never explained how that is a defense and I liken this to a speeding ticket. You get a speeding ticket and then you discover that the city is absolutely positively set up a speed trap in order to enhance the city's revenue. Well, whether that's true or not, you still did the speeding and you still have to pay the fine and you are still guilty of the conduct. So it doesn't matter. But what this does is provide an incredibly chilling effect to counsel to assist anyone in an insurance claim, which is far from simple these days. I mean, isn't the difference here, though, than your speeding analogy that your clients motives mattered? I mean, if the motive was to set up all state, that weighs against your bad faith claim, doesn't it? Your honor, I would suggest you get you're just looking at the mens rea. Did you, you know, did you do it? And did you intend to? Well, if you look at the mens rea of the plaintiff's attorney versus the mens rea of the insurance company, there's no mens rea here. This is a civil case. Okay. All right. So your honor, what I would say, I would suggest though, I would suggest that in one limited circumstance and this court has acknowledged that under a particular nuance of Kansas law, there may be an element to get to the motives of the plaintiff's attorney in a first party excess verdict case, i.e. Whether or not there was a legitimate offer to settle to begin with, but that's unique to Kansas law. It's not consistent with Colorado law. And therefore, again, what this has the effect of is it allows the pretext to be able to then attack the character of plaintiff's counsel, which has a chilling effect on both the ability for people to hire counsel, as well as this glorious thing we have invented in the United States of America called the contingent fee, which is not intended to enhance the lawyers income. It's intended to allow people of less than means of a large corporation to be able to fight that large corporation and get an attorney. I'm sorry, counsel, did you, you were discussing Kansas law and understand that that's not relevant, but I wonder if you were, I didn't see in your brief where you actually cited any law indicating that Colorado law indicating that motive wouldn't be relevant under these circumstances. I believe one case Miller v. Barnes, but that court basically said that it wouldn't find it relevant on that record. And I don't know that I don't know if you can, you can pull that through to this case and apply it. Well, your honor. I mean, that is the only case in Colorado that even approaches or talks about this alleged set of defense, which isn't that problematic for you because it also, I mean, if there's no case that talks about it, how do we can we say that it simply wasn't relevant without any Colorado law one way or the other your honor. I would submit that even if you were able to prove you have the actual evidence that a plaintiff's attorney was intentionally concealing information. First of all, that's a fraud claim and it has to be pled with particularity and all these kinds of things and given notice that even if you had that evidence that may be a circumstance that the jury can consider, but it does not provide a defense to the insurance company to either not pay the claim or to act badly and to violate its duties under the Unfair Claims Practices Act that the Colorado Supreme Court has has enhanced. And so I say over and over again. So what even if and your honor, I would suggest the reason there's no law on it is because Colorado has never recognized any set up defense of any kind. And again, it has no logical relevance to say that if the plaintiff's claim which is exactly the presentation here, but then we have the question of evidence and in order to have the evidence to support it, we didn't even have we don't have in any evidence in this record as to even what the fee agreement was with this particular attorney what her agreement was with her employer how anybody was going to be enhanced by any of this and instead the trial court said I can take judicial notice that a plaintiff's attorney in this kind of case has a financial interest in the outcome of the case. And again, even if there were some material did this case get down to what the attorneys financial interest was. I thought the point to the jury was trying to explain to them the motivation of what happened here. Why are we talking about this is really what the court was trying to convey to the jury. Yes, the closing argument at I think it's around 45 55. It just doesn't make sense unless you know the agenda and it's about the money. It's all about the money and my client my client cannot do business in this kind of a situation where Mr. Azar's lawyers say to my client, etc, etc, etc. So they did highlight and count and highlight the lawyer and talk about the lawyer. That's what this was all about. And again, this has a chilling effect on the Lord not just for this case, but for all other cases. So let's get up the set up the quote set up defense close quote was was not pled as an affirmative defense. Was it it was not pled. In fact, it was never disclosed until I think one of the final pretrial orders, right? I mean, is it isn't it sort of it strikes me as not a defense. It strikes me that the what you call a set up defense is more like an argument in favor of non-cooperation. Well, and then your honor that gets me into the non-cooperation which is the predicate to being able to make this alleged set up defense and the failure to cooperate one thing that surprised me and doing this research and I've done a lot of it because I was also involved in the new cooperation bill and I just want to talk about that for a second. We get a notice of supplemental authority and I know that act was not in effect at the time. All of this was going on but we do think it is relevant to consider the public policy of the state of Colorado and what the Colorado Supreme Court would likely do but the last time the Colorado Supreme Court weighed in on a fair to cooperate case was 1949 and the case of farmers versus canoogras and that cited there are briefs and it says that not every request for assistance will have the effect of defeating the rights of the assured under the policy and this goes into our ambiguity argument because there are two cooperation clauses in every insurance policy. One says you shall give us medical authorization. You shall give us a report and maybe an EUO or give us an authorization to go get them and the other says you shall you shall cooperate in the investigation settlement and defense and we believe that is a third-party clause only should only make sense in a third-party case. All state admitted that if there are 30 v6 deposition that we don't have any duty to assist them in this lawsuit. We don't have any duty to accept their settlement offers, etc. And so why does a cooperation with investigation make sense in a first-party case? I'm sorry or I don't understand. Why doesn't the cooperation cooperating with an investigation that portion of the clause? Why doesn't that totally apply here in a first-party case because it is so broad that the as interpreted by the insurance company as you can see here. It is so broad as to be able to say the insured unless you go out and take photographs and LaVar or Lahanna for us tomorrow. We're going to take away your insurance benefits. They could ask for literally anything and under the Amati case, the Colorado law says that you have to have a specific item that is required in the insurance policy. And for example, if the insurance policy doesn't say that you have to give an EUO outside the presence of other insurance, then they're not allowed to deny your claim because of it wasn't that the case where they refused to have their examinations. The two insureds together, they didn't want to be examined together and the court said, well, the policy doesn't require that. Isn't that different where here we actually have an assent, continual repeated agreements to provide the requested information over and over again. Isn't that distinct and couldn't that by itself be an obvious failure to cooperate? You're not free to provide something and then don't provide it. Well now and I want to be clear about something that might be a relevant circumstance to discuss for the jury to discuss on whether or not the insurance company acted reasonably, but that is different than saying we're going to take your property away. The law of course of forfeiture. It recited all of this case and including the 10th circuit that says under Oklahoma law that you must be given an opportunity to cure. This is a taking of the insurance property. So while that might be a relevant circumstance to consider for the purpose of did the insurance company act reasonably, but your honor with all due respect, I would submit that the the there were not repeated requests for the same thing. There were requests made for things that ultimately turned out to be either impossible to get or equally accessible to all states and it cannot be used to then shift the burden of all states investigation to the insured. How were you ever going to cure in this case? So presumably case suit lawsuits filed. They raise the non-cooperation defense as a defense. I mean, how are you going to cure after you've already filed suit and this is why they're required to give us notice by their own policies and procedures. They're required to give us notice. I believe the Colorado Supreme Court would very clearly hold that they're required to give us some notice. So we have that opportunity to cure their own claim manual say that they have to give us an opportunity to cure but otherwise your honor they have they have engineered a perfect defense and that perfect defense is is that you cannot cure a failure to cooperate after the lawsuit was filed and we don't have to tell you about it or give you any notice about it until after the lawsuit was filed and here they made it very clear that the only reason they raised the cooperation defense in this case was because the lawsuit was filed which and it makes it an extreme risk for an insured and puts the heavy hammer on the insurance company to say you either take our offer or else because if you sue us then we get to go after and do all these things. And again, I'm not arguing about whether it's relevant circumstances to consider for the claim handling counsel. You're out of line. We appreciate your time. Ready to hear from the appellee. Thank you. Your honors may it please the court. My name is Winslow Taylor and I'm appearing today on behalf of Allstate Fire and Casualty Insurance Company. Now this case presents a very specific question for this court and a unique question as well. Should a jury be permitted to decide whether an insured has failed to cooperate when the evidence supports the inference and conclusion that the insured told their insurer that information was forthcoming the insurer then relied on those representations and then the insured withheld relevant information from the insurer. Now, I don't believe it be hyperbole to say that the plaintiff and defendant have wildly differing views on what transpired in this case. And I believe those differences require that I clarify what Allstate's position is in this case and what Allstate's position is not. It has never been Allstate's position that an insured has an obligation to go out and independently create information nor has it been Allstate's position that if an insured makes a good faith effort to provide information and makes a mistake in the process that that is sufficient to forfeit recovery. Instead, Allstate's position is and has been that an insured cannot feign cooperation by agreeing to obtain and provide information and then turn around and accuse the insurer of failing to investigate because it relied on that representation. Allstate's position always has been that an insured cannot voluntarily go out and obtain information that they know the insurer is looking for and then withhold that very information from their insurer. And then it is Allstate's position that an insured cannot impede an investigation and then later accuse the insurer of conducting an unreasonable and untimely investigation. And it is also Allstate's position that all of this, it was up for a jury to determine whether Ms. Khabari was entitled to UIM benefits in this case. Now, I'd like to discuss three primary reasons why I believe the court should affirm the judgment on the breach of contract claim, the bad faith claim, and the unreasonable delay claim. First, the trial court correctly determined and applied the law regarding the failure to cooperate. Second, Allstate believes the plaintiff failed to preserve her arguments regarding the denial of her motion for summary judgment and her motion for directed verdict. Finally, there were disputed facts that had to be submitted to the jury regardless of how the trial court ruled on a failure to cooperate defense and any evidentiary error claimed is necessarily harmless because that evidence was relevant to other issues in the case that proceeded to trial. Say that one again. Say your third one again. Yes, Your Honor, that there were disputed facts that had to be submitted to the jury regardless of how the trial court ruled on the failure to cooperate defense. And because there was evidence that would have been admitted anyway, any evidentiary error is harmless because it was relevant and admissible regarding other claims that survived and went to trial. Plaintiff asserts several errors of law regarding the trial court's interpretation of the failure to cooperate in Colorado, none of which are directly supported by any appellate decision. First, plaintiff argues that an insurer is required to provide pre-litigation notice and an opportunity to cure before the insured's non-cooperation can become an issue. There's simply no case in Colorado law that requires that. The defense, like any other defense or issue, can properly be raised in a response of pleading. And that is exactly what happened here where Allstate asserted an affirmative defense that the insured may have failed to cooperate. Allstate provided notice of the defense and its answer serving all purposes of notice pleading. And further, we would dispute that an opportunity to cure is required. Again, no case law in Colorado states that. But even if it was, whether or not plaintiff could cure or did cure would be a fact question for the jury to determine. And Judge Carson, to your question before, it's Allstate's position that the prejudice could not have been cured in this case because of the ongoing lawsuit for bad faith, which was directly a product of the interactions between Allstate and Ms. Cravari's counsel prior to litigation. Now, plaintiff also argues in the briefs that in order to substantiate a failure to cooperate defense, the insurer must prove that non-cooperation rendered performance literally impossible. And simply put, that's not the law in Colorado. Not a single case states that. While literal impossibility is surely a sufficient showing of non-cooperation and resulting prejudice, it is not a necessary showing. The standard in every case that has discussed this is substantial and material prejudice. And every case that has discussed substantial and material prejudice has also stated it is a question for the jury after hearing the evidence. Certainly, some non-cooperation may result in a claim being literally impossible to investigate. For example, if the insurer destroys evidence or information. Nobody's arguing that that's what occurred here. Colorado law, as I stated, only requires that prejudice be substantial and material. And in Brooks v. Hager, the Court of Appeals stated that whether or not the cooperation clause has been breached, however, is a matter of fact. And the side on that is 481 P. 2nd, 131. After discussing... Is that in your brief? It is. Thank you. And after discussing some of the factors to consider, the Brooks Court noted that these factors are weighed with all other material factors in the case with the ultimate determination left for the trier effect. And in Hanson v. Barmore, also cited in our briefs, Your Honor, the Court of Appeals stated that what would appear at first blush to be a breach of the cooperation clause may be excused if it develops that the failure of the assured was due to mistake and that there was no exercise of bad faith on his part. And Your Honor, this goes directly to motivation than intent. A possible excuse for non-cooperation would be I made a mistake or I had no bad faith and that directly places the intent and motivations of the party at issue. If the defense is we didn't do anything bad, we weren't trying to do anything improper. That can be rebutted by showing that there may have been an improper benefit that they were trying to achieve. Again, the jury should hear the evidence and decide based on the facts what they believe occurred. So I take it on that note that you would probably disagree with the characterization of this as a setup defense that you're suggesting that it's simply relevant evidence with respect to your cooperation, lack of cooperation defense. That's correct, Your Honor. The setup defense is a nice name for a theory of the case, a theory for a party's actions to explain what happened and why. You know, often parties in litigation try to figure out why another party might do something. In the criminal context, you have to prove intent for the crime. And in this case, intent motivations were obviously relevant to why a certain information, which would logically make sense to be provided to the insurer because it would increase the value of the claim. Why would that not be provided? We needed to be able to answer that question for the jury. Otherwise, it makes no sense for someone to take an action that on its face might appear to be against their own interests. We had to be able to explain that it wasn't necessarily against their own interest to let the jury decide who was doing what. Addressing the trial court's denial of the motion for summary judgment and directed verdict. As the court knows, the general rule that the denial of a motion for summary judgment is not appealable if the matter received trial and no post verdict or post judgment motion is filed. And of course, notwithstanding that general rule, there is a limited exception that courts have recognized when the denial of a summary judgment is not appealable. based on a pure question of law. Now, courts have been reluctant in qualifying a denial of a motion for summary judgment as being based on a pure question of law. In fact, this court cautioned in Kohar Thomas v. Morris that, quote, prudent counsel will not rely on their own interpretations of whether an issue is purely a question of law or denied on questions of fact. In that case, the Kohar court quoted from the trial court's order denying summary judgment. And where the trial court wrote, quote, there are genuine issues of material fact regarding whether the defendants complied with the relevant statute and permit. And Allstate would assert that Magistrate Judge Neuweider was similarly clear in this case that he was denying summary judgment on factual grounds. And one quote sums it up. I conclude that this case is fraught with factual disputes. And that's at Appellant Appendix Volume 7, page 1872. And just as the Kohar court gave the trial court's interpretation of its own order deference, we believe that Magistrate Judge Neuweider is entitled to the same deference in this case. And the court should take him back his word when he said he was denying it because of material questions of fact that needed to go to the jury. Speaking of issues to present to the jury, the evidentiary issues here had to be harmless. And the reason for that is simple. Even if the cooperation defense was stricken or judgment was entered in favor of plaintiff on that issue, much of the evidence that was related to the cooperation was also relevant and admissible on the breach of contract claim, the bad faith claim, and the unreasonable delay or denial claim. And plaintiff appears to concede this point. And the reply belief she recognizes that it is appropriate to consider the insured's conduct in responding to information requests to determine whether the claim handling was reasonable. And of course, it makes sense to consider these actions. The reasonableness of an adjuster's investigation requires consideration of the facts and circumstances surrounding the interactions between the parties and what the adjuster was looking at. Now here, the insured's intentions were also relevant and admissible for reasons other than the faith to cooperate. For example, on claim for common law bad faith, obviously there are additional damages that can be recovered there. The damages for things like emotional distress. Well, surely it may be relevant to whether or not Ms. Kravary suffered any emotional distress if being in a bad faith lawsuit was where she intended to be. If it was part of the goal, then how on earth could being in a lawsuit or how could she be compelled to initiate a litigation if that was a part of the goal? Again, that's for the jury to consider. Now, can we talk a little bit about your counterclaim cross appeal issues? Absolutely, Your Honor. So with respect to the bill of costs issue, Allstate made a statutory offer of settlement under Colorado Statute 13-17-202, which allows for a party to serve an offer of settlement. And if the party receiving the offer does not obtain a judgment that is better than the offer, then there are actual costs and other things that must be awarded. And here we believe that the right or wrong when he effectively found that plaintiff effectively beat the offer. The statute by its own terms unambiguously requires a judgment. The only judgment in this case was entered in favor of Allstate. So on that basis alone, a plaintiff could not have satisfied the conditions set forward in the statute to avoid paying Allstate's actual costs. Well, the counsel's argument in opposition to that says, well, Allstate didn't win on all their claims, right? Well, Your Honor, that's an interesting question. There were three claims submitted to the jury, breach of contract, bad faith, and unreasonable delay or denial. And on all three of those claims, the jury found for defendant Allstate. Now, I agree that there was no specific interrogatory asking whether a plaintiff failed to cooperate. And we did request that question at the jury instruction conference. However, we did not want to give additional instructions when the jury came back with a question during deliberations. So I believe it's not wholly accurate to say that we did not request an interrogatory on that. We did not after circumstances changed and the jury had already begun deliberations. But you asked for an instruction on the failure to cooperate claim, right? And the court said no. And we don't have, do we have a cross appeal here to raise that issue? No, Your Honor, we did not raise that issue. And frankly, what we asked for... So are we done on that point? Do they get to keep the money? Well, Your Honor, we moved, we requested the jury to file a supplemental pleading based on Allstate's request for return of the funds after the jury's verdict came back. The request was denied. And at that point, a new claim for recoupment or repletion or however it would be characterized, that arose, that claim arose. And so we asked to supplement the pleading to address that specific question, which... You asked for that, not just after the verdict, but after the notice of appeal had been filed, right? Correct, Your Honor. And that was part of the reason, one of the two reasons. Correct, Your Honor, that was one of the reasons. That was one of the reasons. Well, it was a jurisdiction, for one thing. We don't believe that the notice of appeal necessarily robbed the court of jurisdiction over that question because that claim didn't arise until after the judgment and after Allstate's request for the time is up. So I will thank the court for your time. Did you get a response from that, Judge Moritz? Well, no, not really. Go ahead. Yeah. Go ahead. My question is, in order... Once you file it after the notice of appeal has been filed, you've gotta come in under the collateral order exception. I don't see how it applies here, if that's what you're suggesting. You certainly were aware of the need to file a... To have an instruction on it, if you requested an instruction. So I'm not sure how later on you can say that this wasn't directly related to the failure to cooperate defense that you'd been raising all along. So how is it collateral? Well, the return of the money wasn't necessarily tied to the failure to cooperate defense because the jury's verdict, as it was framed, was how do you find for... Or how do you find on the breach of contract claim? And they found for defendant. And the elements, the instruction on the breach of contract claim, had two bases upon which they could find for defendant. They could find either A, Allstate did not breach by paying when it paid. Or they could also find that plaintiff was not entitled to DUI and benefits because she did not comply, substantially comply with her obligations under the contract. So it could have been either of  them. Thank you. Thank you both for your arguments this morning. The case will be submitted. Thank you for your time this morning, Your Honor. Thank you.